UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CARISSA DANIELS,

               Petitioner,

     v.

PAUL PASTOR, SHERIFF, PIERCE
COUNTY JAIL (as custodian),

             Respondent.

CASE NO. C09-5711BHS

ORDER GRANTING WRIT OF
HABEAS CORPUS

This matter comes before the Court on Petitioner's Petition Under 28 U.S.C. § 2241 For Writ of Habeas Corpus (Dkt. 4). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the writ for the reasons stated herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 13, 2009, Petitioner filed a Petition Under 28 U.S.C. § 2241 For Writ of Habeas Corpus and argued that her Fifth Amendment right to be free from double jeopardy would be violated if the Pierce County Superior Court for the State of Washington retried her on the charge of homicide by abuse. Dkt. 4. On December 23, 2009, Respondent responded. Dkt. 8. On December 31, 2009, Petitioner filed a traverse. Dkt. 13.

Since October 31, 2000, Petitioner has been in the custody of the State of Washington while her case has been tried by the trial court, reviewed by the Washington State Court of Appeals (*State v. Daniels*, 103 P.3d 249 (Wn. App. 2004)), and reviewed twice by the Washington State Supreme Court (*State v. Daniels*, 156 P.3d 905 (Wash.

2007) ("*Daniels I*") and *State v. Daniels*, 200 P.3d 711 (Wash.), *cert. denied*, 130 S. Ct. 85 (2009) ("*Daniels II*")).

Justice Sanders of the Washington State Supreme Court wrote the original majority opinion in *Daniels I* and also wrote the dissenting opinion in the subsequent *Daniels II*. In that dissenting opinion, Justice Sanders recited the facts as follows:

On July 9, 2000, 17-year-old Carissa Daniels gave birth to her son, Damon. Nine weeks later Damon was dead. Daniels was subsequently charged with homicide by abuse and felony murder in the second degree-domestic violence. The second degree felony murder charge was predicated on either second degree assault or first degree criminal mistreatment. Daniels faced a jury trial on these charges.

At the close of evidence the jury was given two verdict forms: form A pertained to the homicide by abuse charge and form B pertained to the second degree felony murder charge. The jury was instructed to fill in guilty or not guilty on form A if it unanimously agreed to the charge of homicide by abuse, otherwise it should leave this form blank. The jury was instructed to consider the second degree felony murder charge and use form B, if it found Daniels not guilty of homicide by abuse or could not agree on that charge. FN2

FN2. Jury instruction 23 reads in part:
When completing the verdict forms, you will first consider the crime of homicide by abuse as charged. If you unanimously agree on a verdict, you must fill in the blank provided in verdict form A the words "not guilty" or the word "guilty," according to the decision you reach. If you cannot agree on a verdict, do not fill in the blank provided in Verdict Form A.
If you find the defendant guilty on verdict form A, do not use verdict form B. If you find the defendant not guilty of the crime of homicide by abuse, or if after full and careful consideration of the evidence you cannot agree on that crime, you will consider the alternatively charged crime of murder in the second degree. . . .

The jury left form A blank and used form B to find Daniels guilty of murder in the second degree. Daniels appealed, arguing our decision in Andress precluded use of assault as a predicate offense for second degree felony murder. *State v. Daniels*, 124 Wn. App. 830, 844, 103 P.3d 249 (2004) (*citing In re Pers. Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002)). The Court of Appeals reversed Daniels's conviction for felony murder as it may have been predicated on assault and remanded for a new trial. The Court of Appeals also held the State could not retry her for homicide by abuse because the jury's silence on that charge acted as an implied acquittal. After the Court of Appeals published its opinion, we decided both [*State v. Linton*, 156 Wn.2d 777 (2006)] and [*State v. Ervin*, 158 Wn.2d 746 (2007)], further elaborating on this issue.

The State petitioned this court for review, seeking to retry Daniels on homicide by abuse. Daniels cross-petitioned, asking this court to determine whether she may be retried for second degree felony murder predicated on criminal mistreatment. We accepted review, heard argument, and published an opinion allowing for retrial on homicide by abuse and second degree murder predicated on criminal mistreatment. *Daniels*, 160 Wn.2d 256, 156 P.3d 905 (2007). Shortly thereafter, the Ninth Circuit Court of Appeals published *Brazzel v. Washington*, 491 F.3d 976 (9th Cir. 2007), which considered the same question but reached the opposite conclusion. Based in part on the Ninth Circuit's reasoning in *Brazzel*, Daniels filed a motion for reconsideration, which we granted.

*Daniels II*, 200 P.3d at 712-713 (some footnotes omitted).

The majority opinion in *Daniels II*, was as follows:

An opinion in this case was reported in *State v. Daniels*, 160 Wn.2d 256, 156 P.3d 905 (2007). We granted a motion for reconsideration, heard oral argument, and now adhere to our prior published opinion.

*Daniels II*, 200 P.2d at 711.  In a concurring opinion, Justice Madsen wrote that the

*Brazzel* decision "provides an interesting perspective, but I do not believe that it compels

a different result upon reconsideration of this case."  *Daniels II*, 200 P.2d at 711.

Petitioner now asks this Court, via a petition for writ of habeas corpus, to apply

*Brazzel* and, as Justice Sanders wrote in dissent, grant to Petitioner the "relief otherwise

available by walking across the street to the federal courts."  *Daniels II*, 200 P.3d at 714

n. 10.

## II. DISCUSSION

### A.    Procedural Matters

With respect to jurisdiction, a federal court has jurisdiction under 28 U.S.C. § 2241

over "a habeas petition raising a double jeopardy challenge to a petitioner's pending

retrial in state court . . . ."  *Wilson v. Belleque*, 554 F.3d 816 (9th Cir.), *cert. denied*, 130

S. Ct. 75 (2009).  Petitioner raises a double jeopardy challenge to her pending trial and,

therefore, the Court has jurisdiction over the petition.

With respect to exhaustion, a petitioner must exhaust all available state court

remedies before filing a § 2241 petition.  *Braden v. 30th Judicial Circuit Court of

Kentucky*, 410 U.S. 484, 490-491 (1973).  In this case, Petitioner has twice presented her

double jeopardy claim to the state supreme court.  Respondent concedes this issue and

asserts that the state "trial court will be bound" by the state supreme court's decision. Therefore, the Court finds that Petitioner has exhausted all available state court remedies.

With respect to the standard of review, pursuant to § 2241, a federal court reviews *de novo* whether an individual "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241; *Stow v. Murashige*, 389 F.3d 880, 885-886 (9th Cir. 2004). Therefore, the Court will review the merits of the petition *de novo*.

**B.     Double Jeopardy**

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., amend V. The two important interests that this clause protects are to prevent the prosecution from making repeated attempts to convict an individual of an alleged offense and to preserve the finality of judgments. *Yeager v. United States*, 129 S. Ct. 2360, 2365 (2009). With respect to how this clause relates to the issue before the Court, the opinions speak for themselves and require neither explanation nor paraphrasing from this Court.

Respondent asserts two arguments for denying the petition: (1) the "unable to agree" jury instruction is constitutionally sufficient and there is no need for the trial court to declare a mistrial if the jury returns a blank verdict form as to the greater charge (Dkt. 8 at 9-13); and (2) *Brazzel* is legally distinguishable because the court was reviewing a petition under 28 U.S.C. § 2254 (Dkt. 8 at 13-18). The Court will address the second argument first.

The *Brazzel* court was presented with a petition under § 2254, which imposes a standard of review that accords a level of deference to state court decisions. *See* 28 U.S.C. § 2254(d). The court, however, reviewed the applicable state court decision for "clear error" because the state court that rendered that decision "did not provide any reason for its determination" that the jury's silence on the greater charge operated as an implied acquittal. *Brazzel*, 491 F.3d at 983. The Court finds Respondent's distinction unavailing because the *Brazzel* court made no suggestion that the state appellant court

somehow made an error that did not rise to the level of clear error. Moreover, accepting Respondent's position would ignore the binding statements in *Brazzel*.

For example, the *Brazzel* court rejected the state's argument that a blank verdict form "should be construed as a hopeless deadlock." *Id.* at 984. The court then interpreted the law regarding the levels of jury disagreement as follows:

> Under federal law, an inability to agree [on the greater charge] with the option of compromise on a lesser alternate offense does not satisfy the high threshold of disagreement required for a hung jury and mistrial to be declared. *See, e.g., Arizona v. Washington*, 434 U.S. [497,] 509, 98 S. Ct. 824. The Supreme Court has characterized disagreement sufficient to warrant a mistrial as "hopeless" or "genuine" "deadlock." *Id.* ("[T]he trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial."). Genuine deadlock is fundamentally different from a situation in which jurors are instructed that if they "cannot agree," they may compromise by convicting of a lesser alternative crime, and they then elect to do so without reporting any splits or divisions when asked about their unanimity.

*Brazzel*, 491 F.3d at 984.

In this case, there is no evidence that the jury was genuinely deadlocked or that their disagreement resulted in a hung jury that necessitated the declaration of a mistrial. Therefore, the Court finds no reason to distinguish *Brazzel* or carve out an exception to that court's interpretation of federal law.

With regard to Respondent's argument that the verdict form is constitutionally sufficient, the Court does not disagree with that assessment. However, being a constitutionally sufficient jury instruction when given by the trial court is separate from being constitutionally sufficient as an exception to the prohibition against double jeopardy. The Washington State Supreme Court recognized that the "unable to agree" instruction "has potential advantages and disadvantages for both the prosecution and the defense." *Labanowski*, 816 P.2d at 36. One disadvantage, or more appropriately unintended consequence, of using the "unable to agree" instruction is that it may result in a record that is silent as to whether the jury was deadlocked. At oral argument, Petitioner's counsel offered the cliche that "the state cannot have its cake and eat it too."

When the state enforces silence and compromise, it must accept the consequence of silence and compromise. On the other hand, if either party desires clarity on the issue of jury deadlock, then it is within the trial judge's discretion whether to develop the record on the issue of the jury's inability to agree. Under current federal law, however, the silence of a jury as to unanimity does not reach the "high threshold of disagreement required for a hung jury. . . ." *Brazzel*, 491 F.3d at 984. Therefore, the Court rejects Respondent's argument to the contrary.

Finally, Respondent argues that the Court should find that Petitioner waived her right to both the high threshold of jury disagreement and the trial court's finding of a genuine deadlock because she agreed to the use of the "unable to agree" jury instruction. Dkt. 8 at 12-13. It can hardly be said that Petitioner agreed to this instruction because the instruction is the "proper instruction" in Washington. *State v. Labanowski*, 816 P.2d 26, 27-28, 31 (Wash. 1991) ("After the date of this opinion, however, the proper instruction to the jury will allow it to render a verdict on a lesser crime if it is unable to agree on the charged crime."). This is the functional equivalent of a forced waiver and Respondent's argument is unavailing.

Therefore, the Court grants Petitioner's Writ for Habeas Corpus because the state's retrial of Petitioner on the charge of homicide by abuse would violate her right to be free from double jeopardy.

## III. ORDER

Therefore, it is hereby

**ORDERED** Petitioner's Petition Under 28 U.S.C. § 2241 For Writ of Habeas Corpus (Dkt. 4) is **GRANTED**.

DATED this 6th day of January, 2010.

BENJAMIN H. SETTLE
United States District Judge